UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JOSE ORELLANA, et al.,              )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )   Civil Action No. 16-2181 (RBW)
                                    )
NBSB INC. d/b/a GEORGE'S KING OF    )
FALAFEL AND CHEESESTEAK, et al.,    )
                                    )
            Defendants.             )
_____)

# MEMORANDUM OPINION

The five plaintiffs—Jose Orellana ("Jose"), Santos Orellana ("Santos"), Adali Valeriano Vasquez ("Valeriano"), Herlan Edgardo Cornejo Bajurto ("Cornejo"), and Moises Del Rosario ("Del Rosario")—bring this civil action against three defendants—NBSB Inc. d/b/a George's King of Falafel and Cheesesteak ("George's King"), Souheil Ben Mansour ("Souheil"), and Sofiene Ben Mansour ("Sofiene")—asserting violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201–19 (2012) (the "FLSA"), and the District of Columbia Minimum Wage Act, D.C. Code §§ 32-1001 to -1015 (2012) (the "DCMWA"). See generally Second Amended Complaint ("2d Am. Compl."). Currently before the Court is the Plaintiffs' Motion for Partial Summary Judgment ("Pls.' Mot."). Upon careful consideration of the parties' submissions,[1] the Court concludes that it must grant in part and deny in part the plaintiffs' motion.

---

[1] In addition to the filings previously identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment ("Pls.' Mem."); (2) the Plaintiffs' Statement of Undisputed Material Facts as to Which No Genuine Issue Exists in Support of Their Motion for Partial Summary Judgment ("Pls.' Facts"); (3) the Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Defs.' Opp'n"); (4) the Defendants' Counter-Statement of Material Facts as to Which There is a Genuine Dispute ("Defs.' Facts"); (5) the Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Pls.' Reply"); and (6) the Defendants' Sur-Reply ("Defs.' Sur-Reply").

# I. BACKGROUND

The following facts are not in dispute.[2] Defendant George's King "is a corporation formed under the laws of" and "operating as a restaurant in" the District of Columbia. Pls.' Facts ¶ 1; Defs.' Facts ¶ 1. Defendants Souheil and Sofiene are brothers and co-owners of George's King, with each having a twenty-five percent ownership interest in the business.[3] Pls.' Facts ¶ 2; Defs.' Facts ¶ 2.

The plaintiffs are former George's King employees: (1) "Jose [ ] worked for [George's King] from at least May 4, 2016, until at least September 2, 2016," Pls.' Facts ¶ 3; Defs.' Facts ¶ 3; (2) "Santos [ ] worked for [George's King] from at least April 30, 2016, until at least December 9, 2016," Pls.' Facts ¶ 7; Defs.' Facts ¶ 7; (3) "Valeriano . . . worked for [George's King] from at least May 30, 2016, until at least January 21, 2017," Pls.' Facts ¶ 11; Defs.' Facts ¶ 11; (4) "Cornejo . . . worked for [George's King] from at least August 4, 2016, until at least February 25, 2017," Pls.' Facts ¶ 15; Defs.' Facts ¶ 15; and (5) "Del[] Rosario [ ] worked for [George's King] from at least May 3, 2016, until at least January 5, 2017," Pls.' Facts ¶ 19; Defs.' Facts ¶ 19. "During their employment at George's King, [the p]laintiffs spent more than

---

[2] The defendants ask the Court to "summarily deny" the plaintiffs' motion because the Plaintiffs' Statement of Undisputed Material Facts as to Which No Genuine Issue Exists in Support of Their Motion for Partial Summary Judgment does not comply with the Court's General Order. Defs.' Opp'n at 4. Specifically, the defendants contend that this submission "contains multiple facts in each paragraph along with improper references (essentially requests for admissions) to [the d]efendants' deposition testimony and interrogatory responses and [the p]laintiffs' commentary in footnotes." Id. at 5. Upon review of the plaintiff's submission, the Court agrees that in some instances, the document does not comply with the Court's instruction to include "only one factual assertion in each numbered paragraph," Gen. Order for Civ. Cases Before the Hon. Reggie B. Walton ("Gen. Order") ¶ 12(a) (Jan. 3, 2017), ECF No. 6; see, e.g., Pls.' Facts ¶ 2, and in many cases contains facts that are clearly disputed, see, e.g., Pls.' Facts ¶ 3 n.1. However, given "the clear preference of the Federal Rules to resolve disputes on their merits," Cohen v. Bd. of Trs. of Univ. of D.C., 819 F.3d 476, 482 (D.C. Cir. 2016), as well as the fact that the defendants' filings also do not comply with certain provisions of the General Order, see Gen. Order ¶ 10(d) (setting forth requirements regarding font); see generally Defs.' Opp'n; Defs.' Sur-Reply (not following those requirements), the Court will not deny the plaintiffs' motion due to their failure to fully comply with the General Order.

[3] The remaining fifty percent of George's King is owned by the brothers' father, "Hichem Ben Mansour, who is not involved in the management of the restaurant." Pls.' Facts ¶ 2; Defs.' Facts ¶ 2.

2

[fifty percent] of their time working in the District of Columbia." Pls.' Facts ¶ 32; Defs.' Facts ¶ 32.

Regarding George's King's overtime and minimum wage obligations, "George's King's employee handbook states: 'In accordance with Federal Minimum Wage Law, employees are paid overtime when they work more than [forty] hours in one week. Hourly employees are paid at one and one-half times their basic straight time rate for all overtime hours works.'" Pls.' Facts ¶ 33; Defs.' Facts ¶ 33. Souheil "did not consult an attorney about the legality of choosing not to pay [George's King's] employees overtime." Pls.' Facts ¶ 34; Defs.' Facts ¶ 34.

In their Second Amended Complaint, the plaintiffs assert five causes of action against all three defendants: (1) failure to pay overtime wages in violation of the FLSA, 2d Am. Compl. ¶¶ 31–37; (2) failure to pay overtime wages in violation of the DCMWA, id. ¶¶ 38–43; (3) failure to pay minimum wages in violation of the DCMWA, id. ¶¶ 44–49; (4) retaliation in violation of the FLSA, id. ¶¶ 50–58; and (5) retaliation in violation of the DCMWA, see id. ¶¶ 59–67. After the parties completed discovery, the plaintiffs filed their motion for partial summary judgment on March 2, 2018, seeking judgments regarding their overtime and minimum wage claims. See Pls.' Mot. at 1–2. Specifically, the plaintiffs seek judgment as a matter of law on the following issues:

1. [Whether] the [d]efendants violated the FLSA and the DCMWA by failing to pay [the p]laintiffs at the rate of one-and-one-half times [ ] their regular rates of pay for hours they worked each week in excess of forty [ ];

2. [Whether] the [d]efendants violated the DCMWA by failing to pay [the p]laintiffs at the legally required minimum wage;

3. [Whether] Souheil . . . and Sofiene [ ] were [the p]laintiffs' employers under the FLSA and the DCMWA, and are jointly and severally liable to [the p]laintiffs; and

3

> 4. [Whether the p]laintiffs are entitled to liquidated damages in an amount equal to three times [ ] their unpaid overtime wages.

Id. Defendants Souheil and George's King concede liability for failing to pay overtime and the minimum wages for some of the hours that some of the plaintiffs worked. See Defs.' Opp'n at 13–16. Otherwise, the defendants oppose the plaintiffs' motion. See Defs.' Sur-Reply at 1–2 (clarifying that the liability is conceded only for these two defendants).

## II. STANDARD OF REVIEW

Courts will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under governing law," and a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in his or her favor. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)). "Credibility determinations [and] weighing of the evidence" are not proper functions for the Court on summary judgment. Liberty Lobby, 477 U.S. at 255. Thus, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his or her] favor." Id.

However, the non-movant may not rely upon "mere allegations or denials," Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (citing Liberty Lobby, 477 U.S. at 248), and "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the non-movant "must set forth specific facts showing there is a genuine issue for trial," Liberty Lobby,

4

477 U.S. at 248, and "there is [genuine] issue for trial unless there is sufficient evidence favoring the [non-movant] party for a jury to return a verdict for [the non-movant]," id. at 249. If the Court concludes that "the nonmoving party has failed to make a sufficient showing on an essential element of [his or her] case with respect to which [he or she] has the burden of proof," the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

### III. ANALYSIS

#### A. Conceded Liability and Damages

As stated above, defendants Souheil and George's King concede liability for failing to pay overtime and the minimum wages for some of the hours that some of the plaintiffs worked. See Defs.' Opp'n at 13–16; see also Defs.' Sur-Reply at 1–2.[4] The Court will summarize the conceded liability for each failure in turn.

##### 1. Overtime Liability

Section 207 of the FLSA requires employers to pay hourly employees overtime wages "at a rate not less than one and one-half times the regular rate[s] at which [they are] employed" for all hours worked in excess of forty in a given workweek. 29 U.S.C. § 207(a)(1); see also Integrity Staffing Sols., Inc. v. Busk, __ U.S. __, __, 135 S. Ct. 513, 516 (2014) ("Enacted in 1938, the FLSA established minimum wage and overtime compensation for each hour worked in excess of [forty] hours in each workweek. An employer who violated these provisions could be held civilly liable for backpay, liquidated damages, and attorney's fees." (citations omitted)). Similarly, under the DCMWA, an "employee [must] receive[] compensation . . . at a rate not less

---

[4] Accordingly, defendants Souheil and George's King concede that both were the plaintiffs' employers under both statutes. See Defs.' Sur-Reply at 2 (clarifying that only defendants George's King and Souheil concede liability as the plaintiffs' employers).

5

than [one and one-half times] the regular rate at which the employee is employed" for hours worked "in excess of [forty] hours" in a workweek. D.C. Code § 32-1003(c). In accordance with the conclusion of its colleagues, this Court construes the overtime provisions in the FLSA and the DCMWA consistently, and shall consider the FLSA and DCMWA overtime claims together. See Rodriguez v. Adams Rest. Grp., 308 F. Supp. 3d 359, 363 (D.D.C. 2018) ("The legal standards for the overtime provisions of the Federal Labor Standards Act and the D.C. Minimum Wage Act are essentially identical, so the Court will analyze the claims together."); Hernandez v. Stringer, 210 F. Supp. 3d 54, 59 n.2 (D.D.C. 2016) (same); Gainor v. Optical Soc'y of Am., Inc., 206 F. Supp. 3d 290, 297 (D.D.C. 2016) (same).

Defendants Souheil and George's King concede liability for failing to pay overtime wages for some of the hours worked by four of the five plaintiffs. See Defs.' Opp'n at 13 (citing Pls.' Mot., Exhibit ("Ex.") 13 (George's King Employee Charts) at 1–6).[5] Specifically, defendants Souheil and George's King concede the following unpaid overtime wages for each of the four employees:

| Employee | A. Number of overtime hours worked | B. Hourly wage | C. Amount paid for overtime hours (AxB) | D. Overtime wage (1.5x B) | E. Overtime wage that should have been paid (AxD) | F. Overtime liability (E–C) |
|---|---|---|---|---|---|---|
| Cornejo | 98 | $11.00 | $1,078.00 | $16.50 | $1,617.00 | $539.00 |
| Jose | 2 | $11.00 | $22.00 | $16.50 | $33.00 | $11.00 |
| Santos | 90 | $11.00 | $990.00 | $16.50 | $1,485.00 | $495.00 |
| Santos | 168 | $11.50 | $1,932.00 | $17.25 | $2,898.00 | $966.00 |
| Valeriano | 69.5 | $11.00 | $764.50.00 | $16.50 | $1,146.75 | $382.25 |
| Valeriano | 328.5 | $11.50 | $3,777.75 | $17.25 | $5,666.63 | $1,888.88 |

---

[5] Defendants Souheil and George's King do not concede any overtime liability for plaintiff Del Rosario. See Defs.' Opp'n at 13 (arguing that Del Rosario "did not work overtime" (citing Pls.' Mot., Ex. 13 (George's King Employee Charts) at 4–5)).

See Pls.' Mot., Ex. 13 (George's King Employee Charts) at 1–6. Accordingly, given defendants George's King's and Souheil's explicit concessions, the Court concludes that George's King and Souheil are jointly and severally liable to (1) plaintiff Cornejo in the amount of $539 in overtime wages; (2) plaintiff Jose in the amount of $11.00 in overtime wages; (3) plaintiff Santos in the amount of $1,461.00 in overtime wages; and (4) plaintiff Valeriano in the amount of $2,271.13 in overtime wages. See id.; cf. Arencibia v. 2401 Rest. Corp., 831 F. Supp. 2d 164, 167 (D.D.C. 2011) (entering summary judgment for the defendants on certain claims that the plaintiffs conceded).

### 2. Minimum Wage Liability

Section 32-1003 of the DCMWA sets forth the legally required minimum wage to be paid to hourly employees working in the District of Columbia. See D.C. Code § 32-1003. From July 1, 2015, through June 30, 2016, the minimum wage was $10.50 per hour, id. § 32-1003(a)(4), and from July 1, 2016, through June 30, 2017, the minimum wage was $11.50 per hour, id. § 32-1003(a)(5)(A)(i).

Defendants Souheil and George's King concede liability for failing to pay minimum wages for some of the hours worked by three of the five plaintiffs. See Defs.' Opp'n at 14–16.[6] Specifically, defendants Souheil and George's King concede the following minimum wage violations:

---

[6] Defendants Souheil and George's King do not concede any minimum wage liability for plaintiffs Santos or Valeriano. See Defs.' Opp'n at 15 (arguing that these plaintiffs were paid "the minimum hourly rate in effect at the time").

7

| Employee | A. Date Range | B. Hourly Wage Paid | C. Number of Hours Worked | D. Wages Earned (BxC) | E. District Minimum Wage | F. Wages Due (CxE) | G. Minimum Wage Liability (F–D) |
|---|---|---|---|---|---|---|---|
| Jose | July 2016 – September 2016 | $11.00 | 275 | $3,025.00 | $11.50 | $3,162.50 | $137.50 |
| Cornejo | August 2016 – March[7] 2017 | $11.00 | 1,170 | $12,870.00 | $11.50 | $13,455.00 | $585.00 |
| Del Rosario | July 2016 – September 2016 | $11.00 | 247 | $2,717.00 | $11.50 | $2,840.50 | $123.50 |

Defs.' Opp'n at 14–15 (citing Pls.' Mot., Ex. 13 (George's King Employee Charts) at 1–6). Accordingly, given defendants George's King's and Souheil's explicit concessions, the Court concludes that George's King and Souheil are jointly and severally liable to (1) plaintiff Jose in the amount of $137.50 in minimum wages; (2) plaintiff Cornejo in the amount of $585.00 in minimum wages; and (3) plaintiff Del Rosario in the amount of $123.50 in minimum wages. See id.; see also Arencibia, 831 F. Supp. 2d at 167 (entering summary judgment on conceded claims).

**B.      Contested Liability and Damages**

All five of the plaintiffs argue that the defendants have greater liability than what has been conceded with respect to both overtime payments, see 2d Am. Compl. ¶ 16 (contending that all five "[p]laintiffs worked more than [forty] hours per week virtually every week" of their employment); id. ¶¶ 11–15 (contending that all five plaintiffs were paid a straight wage "even for

---

[7] Although the defendants state in their opposition that the time period conceded for Cornejo is August 2016 through February 2017, see Defs.' Opp'n at 14, their own employee records on which their concessions are based state that they paid Cornejo $11.00 per hour through March 2017, see Pls.' Mot., Ex. 13 (George's King Employee Charts) at 1). Accordingly, the Court concludes that the correct period is August 2016 through March 2017.

the hours [ ] worked over forty"); Pls.' Reply at 4 ("[The d]efendants also failed to pay [p]laintiff [ ] Del[] Rosario for the overtime hours he worked."), and minimum wage pay, see 2d Am. Compl. ¶¶ 11–15 (contending that all five plaintiffs were paid "between $9.00 and $11.00 per hour" throughout their employment); Pls.' Reply at 5 ("[The d]efendants also failed to pay the minimum wage to [p]laintiffs Santos [ ] and [ ] Valeriano [ ]."). For the following reasons, the Court concludes that the balance of defendants George's King's and Souheil's overtime and minimum wage liability is disputed and remains an issue for trial.

The parties rely on conflicting evidence to support their respective positions regarding the plaintiffs' alleged overtime hours and minimum wages that have not been conceded. See Defs.' Facts ¶¶ 5–6, 9–10, 13–14, 17–18, 21–22, 25 (disputing the plaintiffs' facts with regard to overtime hours and minimum wages and pointing to other evidence in the record to support the contrary position). For example, regarding Del Rosario's purported overtime hours, the plaintiffs point to Souheil's deposition testimony, see Pls.' Mot., Ex. 2 (Deposition of Souheil Ben Mansour ("Souheil Dep.") at 52:8–12 ("Q: . . . There were a few times in which Mr. Del Rosario worked more than [forty] hours per week for George's [King], correct? A: Correct."), Del Rosario's affidavit, see id., Ex. 6 (Affidavit of Moises Del[] Rosario ("Del Rosario Aff.")) ¶¶ 4–5 ("I worked over [forty] hours per week in virtually every week I worked for [the d]efendants at George's King. [ ] Throughout my employment with [the d]efendants, I regularly worked between twenty-five [ ] and thirty-two [ ] hours of overtime per week."), and George's King's timeclock records, see id., Ex. 12 (Moises Del[]Rosario Payroll Records ("Del Rosario Payroll Records")) at 1–2 (showing that Del Rosario worked overtime hours on May 29, 2016; April 29, 2017; and May 6, 2017), as evidence that Del Rosario worked overtime hours, see Pls.' Mem. at 5; Pls.' Reply at 4–5; Pls.' Facts ¶¶ 24–25. The defendants contend in response that

George's King's responses to the plaintiffs' interrogatories, see Pls.' Mot., Ex. 3 (Defendant NBSB Inc. d/b/a George's King of Falafel and Cheesesteak's Response to Plaintiff[s'] Interrogatories ("George's King's Interrog. Resp.") ¶ 8 ("[Del] Rosario never worked more than [forty] hours per week."), and internal employee spreadsheets, see id., Ex. 13 (George's King Employee Charts) at 4–5 (showing no workweeks in which Del Rosario worked more than forty hours), demonstrate that "[a] dispute of material fact exists as to whether Del Rosario worked overtime, [and if he did, how often,] which precludes summary judgment as to his claim for liability," Defs.' Opp'n at 13. In reply, the plaintiffs argue that the defendants have failed to keep appropriate payroll hours, and therefore, the plaintiffs have satisfied their evidentiary burden regarding the hours they worked. See Pls.' Reply at 5–7.

"[T]he Supreme Court [has] established the framework for allocating burdens of proof in cases brought under the FLSA for unpaid wages or overtime compensation." Arias v. U.S. Serv. Indus., Inc., 80 F.3d 509, 511 (D.C. Cir. 1996) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946)). Under this framework, the employee "has the burden of proving that he performed work for which he was not properly compensated," id. (quoting Mt. Clemens Pottery, 328 U.S. at 687), but "[w]here an employer's records are incomplete or inaccurate, an employee need only 'alleg[e] that he performed work for which he was not properly compensated and then produc[e] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference' in order to make a prima facie case for overtime compensation," Escamilla v. Nuyen, 200 F. Supp. 3d 114, 122 (D.D.C. 2016) (Escamilla I) (second and third alterations in original) (emphasis removed) (quoting Hunter v. Sprint Corp., 453 F. Supp. 2d 44, 52 (D.D.C. 2006)); see also Serrano v. Chicken-Out Inc., 209 F. Supp. 3d 179, 187 (D.D.C. 2016) ("The [Mt. Clemens Pottery] standard also applies to claims under the DCMWA . . . .").

10

Other members of this Court have held that, where parties dispute the reliability of the employers' time records, employees are not entitled to a presumption that their calculations of unpaid overtime hours are correct at the summary judgment stage. For example, in Morales v. Landis Construction Corp., the plaintiff filed a motion for summary judgment on his overtime claims and pointed to different exhibits in the record to support his position that the defendants' time records were incorrect, while the defendants "denie[d] that the time sheets [we]re inadequate." 715 F. Supp. 2d 86, 89 (D.D.C. 2010). Judge Friedman held:

> Taking all of [the defendants'] statements as accurate, as the Court must at this stage, there is no basis to determine as a matter of fact or law that [the] defendants' time sheets are inaccurate or unreliable. The Court therefore cannot afford [the] plaintiff's calculation of overtime hours the presumption of accuracy that he seeks. . . . A genuine issue of material facts exists as to how many overtime hours [the] plaintiff worked for the relevant time period.

Id. at 90; see also Hernandez, 210 F. Supp. 3d at 61 ("[T]he Court cannot make credibility determinations regarding the parties' respective evidence on a motion for summary judgment, and for that reason the issue of the number of hours of work [the] plaintiff actually performed may ultimately be one for a jury."); Escamilla I, 200 F. Supp. 3d at 123 ("Resolving disputes as to the hours of work actually performed or as to the reasonableness of the [Mt. Clemens Pottery] inference often 'requires an assessment of credibility,' which is beyond the scope of summary judgment." (quoting Hunter, 453 F. Supp. 2d at 53)); Radtke v. Caschetta, No. 06-2031 (EGS/DAR), 2011 WL 3681545, at *8 (D.D.C. Aug. 12, 2011) (concluding that, "[f]or the same reasons [as in Morales], . . . there is a genuine issue of material fact regarding the number of hours these [p]laintiffs worked during the relevant time period"). For the same reasons, this Court also concludes that the accuracy of the defendants' payroll records raises a genuine dispute of material fact, and therefore, it must deny the plaintiffs' motion for partial summary judgment regarding its overtime and minimum wage claims that have not been conceded.

**B.     Liquidated Damages**

The plaintiffs seek liquidated damages under the FLSA and the DCMWA on the grounds that any failure to pay overtime wages "was not the product of objective 'good faith.'" Pls.' Mem. at 12; see also 2d Am. Compl. ¶¶ 37, 43, 49 (same).  The Court agrees with the plaintiffs that they are entitled to liquidated damages.

The FLSA provides that "[a]ny employer who violates the [minimum wage or overtime provisions of the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  Similarly, the DCMWA provides that "any employer who pays any employee less than the wage to which that employee is entitled under [the DCMWA] shall be liable to that employee in the amount of the unpaid wages, statutory penalties, and an additional amount as liquidated damages equal to treble the amount of unpaid wages." D.C. Code § 32-1012(b)(1); see also Herrera v. Mitch O'Hara LLC, 257 F. Supp. 3d 37, 43 (D.D.C. 2017) ("While liability under the FLSA substantially overlaps with the provisions of the D.C. Minimum Wage Act, the liquidated damages provided by the D.C. statute are greater than those provided by the FLSA."). "Because '[District of Columbia] law is more generous to employees . . . , the Court will first assess [whether liquidated] damages [should be awarded] under [District of Columbia] law and [if so, it] will not award a duplicative amount pursuant to federal law.'" Sanchez v. Devashish Hosp., LLC, 322 F.R.D. 32, 38 (D.D.C. 2017) (Walton, J.) (alterations in original) (quoting Ventura v. L.A. Howard Constr. Co., 134 F. Supp. 3d 99, 104 (D.D.C. 2015)); see also Herrera, 257 F. Supp. 3d at 44 (same).

"The presumption in favor of awarding liquidated damages is strong." Ayala v. Tito Contractors, Inc., 82 F. Supp. 3d 279, 285 (D.D.C. 2015).  Under the FLSA and the DCMWA,

"[i]f the employer can prove that it acted in good faith or reasonably believed that its failure to pay compensation was not a violation of the statute, the court may, in its discretion, award no liquidated damages at all or some amount less than the full amount authorized in the statute." Serrano, 209 F. Supp. 3d at 191. But "the 'standard for liquidated damages under the FLSA and the DCMWA is quite plaintiff-friendly,'" Escamilla v. Nuyen, 227 F. Supp. 3d 37, 54 (D.D.C. 2017) (Escamilla II) (quoting Guevara v. Ischia, Inc., 47 F. Supp. 3d 23, 29 (D.D.C. 2014)), and "an employer's defense against an award of liquidated damages requires 'an affirmative showing of a genuine attempt to ascertain what the law requires, not simply the absence of subjective bad faith,'" id. (quoting Thompson v. Linda & A., Inc., 779 F. Supp. 2d 139, 153 (D.D.C. 2011)); see also Thomas v. Howard Univ. Hosp., 39 F.3d 370, 373 (D.C. Cir. 1994) ("In most instances an employer will be able to satisfy [the FLSA's] 'reasonable grounds' requirement only if it has relied on a reasonable, albeit erroneous, interpretation of the [statute] or of the regulations issued thereunder."). The DCMWA also requires that an employer demonstrate that it "promptly paid the full amount of wages claimed to be owed to the employee[]" to avoid the imposition of liquidated damages. D.C. Code § 32-1012(b)(2)(C).

Here, the Court concludes that the defendants have made no such showing of good faith under either statute, not only because they failed to address liquidated damages at all in their briefing, see generally Defs.' Opp'n; Defs.' Sur-Reply, but also because, as the plaintiffs note, see Pls.' Mem. at 14, Souheil admitted that he did not seek or rely on legal advice regarding overtime liability, see Pls.' Mot., Ex. 2 (Souheil's Dep.) at 246:9–13 ("Q: [P]rior to this suit, did you ever speak with an attorney or some other person about the legality of not paying your employees overtime? A: No, I did not."); see also Defs.' Facts ¶ 34 (admitting that Souheil did not consult an attorney). Therefore, the Court concludes that, because the defendants have

conceded at least some liability regarding their failure to pay overtime and minimum wages, see supra at Part III.A, and have not shown that they had reasonable grounds to do so, nor that they promptly repaid the wages owed, see D.C. Code § 32-1012(b)(2), the plaintiffs are entitled to recover liquidated damages in an amount equal to three times their total unpaid overtime wages, see id. § 32-1012(b)(1). However, the precise amount of liquidated damages will have to be determined in a subsequent proceeding, after the total amount of overtime liability is resolved. See Ayala, 82 F. Supp. 3d at 286 (holding that the plaintiffs were entitled to receive liquidated damages as a matter of law, but deferring the precise amount for "determin[ation] in a subsequent proceeding"); Danesh v. Rite Aid Corp., 39 F. Supp. 2d 7, 13 (D.D.C. 1999) (same).

### C.     Sofiene's Liability as an Employer

Finally, the plaintiffs request that the Court find as a matter of law that defendant Sofiene is the plaintiffs' employer under both the FLSA and the DCWMA. See Pls.' Mem. at 10; see also Pls.' Reply at 1–4. The defendants argue that Sofiene's employer status constitutes a genuine issue of material fact. See Defs.' Opp'n at 6. The Court agrees with the defendants.

"To be liable for violations of the FLSA [and the DCMWA], the defendant must be an 'employer.'" Ventura v. Bebo Foods, Inc., 738 F. Supp. 2d 1, 5 (D.D.C. 2010) (citing 29 U.S.C. §§ 206–07 (2010)); see also Guevara, 47 F. Supp. 3d at 26 ("For the purposes of individual liability, the word 'employer' in the FLSA and the DCMWA is generally interpreted the same way." (citing Williams v. Wash. Metro. Area Transp. Auth., 472 F.2d 1258, 1261 (D.C. Cir. 1972))). "[C]ourts look to the 'economic reality' rather than technical common law concepts of agency to determine whether a defendant is an employer." Bebo Foods, 738 F. Supp. 2d at 5 (citing Morrison v. Int'l Programs Consortium, Inc., 253 F.3d 5, 11 (D.C. Cir. 2001)).

Under the economic reality test, courts consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Morrison, 253 F.3d at 11 (quoting Henthorn v. Dep't of Navy, 29 F.3d 682, 684 (D.C. Cir. 1994)). An employee may have more than one employer for purposes of FLSA and DCMWA liability, and a corporate officer may qualify as an employer along with the corporation if the officer has operational control of the corporation's enterprise. See Bebo Foods, 738 F. Supp. 2d at 5. "To determine whether a corporate officer has operational control, the Court looks at the factors [of the economic reality test] plus the ownership interest of the corporate officer." Id. at 5–6. No single factor is dispositive, and the Court must look at the totality of the circumstances and consider any relevant evidence. Morrison, 253 F.3d at 11.

The plaintiffs argue that Sofiene is liable as an employer under the economic reality test because Sofiene and Souheil co-own and "are jointly responsible for the day-to-day operations and management of George's King." Pls.' Mem. at 11. They rely on Souheil's deposition testimony, George's King's supplemental responses to their interrogatories, and the plaintiffs' affidavits, which support their position that Sofiene "had the power[] to hire and fire employees, to set and control [the p]laintiffs' schedules, [to] determine employees' rates of pay, and to maintain employee records." Id. at 11 (citing Pls.' Facts ¶¶ 2, 26–30); see also Pls.' Reply at 2–3 (pointing to George's King's supplemental responses to their interrogatories, which state that Sofiene had "[l]imited power to set and control [the] [p]laintiffs' work schedule[s]," and had "limited responsibilities for day-to-day operation and management of the business" (quoting Pls.' Mot., Ex. 1 (Defs.' Suppl. Interrog. Resp.) ¶ 13)).

15

The defendants contend that Sofiene is not an employer under the economic reality test. See Defs.' Opp'n at 6–13. Although they agree that Sofiene has a twenty-five percent ownership interest in George's King, see Defs.' Facts ¶ 2; Defs.' Opp'n at 8; they point out that Sofiene (1) "was incarcerated from July 2014 to August 2015," during which time he was not present at George's King; (2) did not return to an active role following his incarceration and only visited George's King sporadically throughout the week; (3) did not have or exercise the power to hire, fire, or discipline the plaintiffs; (4) did not supervise the plaintiffs; (5) did not have or exercise the power to set the plaintiffs' schedules; (6) did not maintain employee records; and (7) played no role in the management or day-to-day operations of George's King, Defs.' Opp'n at 7–8. Instead, the defendants maintain that Sofiene "was the quintessential 'silent business partner,'" and that the brothers agreed that Souheil "would manage all aspects of the restaurant." Id. at 8–9; see also id., Ex. 3 (Declaration of Sofiene Ben Mansour ("Sofiene Decl.")) ¶¶ 4–18 (denying that he had any supervisory responsibilities over the plaintiffs); Pls.' Mot., Ex. 1 (Defs.' Suppl. Interrog. Resp.) ¶ 13 (stating that Sofiene has "limited responsibilities for [the] day-to-day operation and management of [George's King]" and had "[l]imited power to set and control [the] [p]laintiffs' work schedule[s]").

"The conflicting accounts of [Sofiene's] role with the restaurant present numerous disputes of material fact that could determine the legal conclusion" regarding Sofiene's personal liability under the FLSA and the DCMWA. See Rodriguez, 308 F. Supp. 39 at 366. "Because a factfinder must make the credibility determinations required to resolve these issues, summary judgment on [Sofiene's employer status] is unwarranted." Zirintusa v. Whitaker, 674 F. Supp. 2d 1, 7 (D.D.C. 2009). Accordingly, the Court must deny the plaintiffs' motion for summary judgment regarding Sofiene's liability as an employer under the FLSA and the DCMWA.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that defendants George's King and Souheil Ben Mansour were the plaintiffs' employers under the FLSA and DCMWA, and are jointly and severally liable to: (1) plaintiff Herlan Edgardo Cornejo Bajurto in the amount of $539.00 in overtime wages and $585.00 in minimum wages; (2) plaintiff Jose Orellana in the amount of $11.00 in overtime wages and $137.50 in minimum wages; (3) plaintiff Santos Orellana in the amount of $1,461.00 in overtime wages; (4) plaintiff Adali Valeriano Vasquez in the amount of $2,271.13 in overtime wages; and (5) plaintiff Moises Del Rosario in the amount of $123.50 in minimum wages. The Court also concludes, however, that the balance of the defendants' overtime and minimum wage liability is disputed and remains an issue for trial. The Court further concludes that the plaintiffs are entitled to recover liquidated damages in an amount equal to three times their total unpaid overtime wages, and that the precise amount will be determined later after the total amount of overtime liability is determined. Finally, the Court concludes that there is a genuine dispute of material fact regarding Sofiene Ben Mansour's employer status under the FLSA and the DCMWA. Accordingly, the Court must grant in part and deny in part the plaintiffs' motion for partial summary judgment.

**SO ORDERED** this 18th day of September, 2018.[8]

REGGIE B. WALTON<br>
United States District Judge

---

[8] This Court will contemporaneously issue an Order consistent with this Memorandum Opinion.